1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD A. LYON, JR.,

               Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

               Defendant.

NO.  C07-501CRD

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

      Plaintiff Richard Lyon appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33 and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court affirms the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

      Plaintiff is a thirty-one-year-old male, twenty-four years old at the alleged disability onset date. He completed high school and has taken some community college courses.  He has work experience as a material handler/box loader, car detailer, short order cook, stock clerk, kitchen manager, and dishwasher.

ORDER - 1

Plaintiff applied for SSI and DIB in October 2002, alleging disability since May 10, 2001 due to back pain and reduced arm/hand functioning.  His claim was denied initially and upon reconsideration, and he timely requested an ALJ hearing.

A *de novo* hearing before ALJ Edward Nichols was held on June 21, 2006.  The ALJ heard testimony from two witnesses: a vocational expert ("VE") and Plaintiff, who was represented by counsel, Debra Vanhaus, Esq.  Administrative Record ("AR") at 21-32.  The ALJ rendered an unfavorable decision on September 8, 2006, finding Plaintiff not disabled.  Plaintiff requested review by the Appeals Counsel and review was denied, rendering the ALJ's decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 422.210 (2006).  On May 7, 2007, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

ORDER - 2

# IV. THE DISABILITY EVALUATION

As the claimant, Mr. Lyon bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found Plaintiff was injured on the job on May 10, 2001 and had not engaged in substantial gainful activity after July 31, 2001. AR at 24-25, Finding 2. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case the ALJ found Plaintiff has the severe impairments of: degenerative disc disease of the cervical and lumbar spine, thoracic outlet syndrome, depression, and obesity. AR at 24, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

whether the impairment meets or equals any of the listed impairments described in the regulations.  20

C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for

the required twelve-month duration requirement is disabled.  *Id.*  In this case the ALJ found that

Plaintiff's impairments did not meet or equal the requirements of any listed impairment.  AR at 26,

Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the

regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional

capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the

physical and mental demands of the claimant's past relevant work to determine whether he can still

perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The ALJ in this case determined that Plaintiff

retained a RFC for a range of light work.  AR at 26, Finding 5.  The ALJ next found that Plaintiff could

not perform any past relevant work.  *Id*. at 30, Finding 6.

If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

the burden shifts to the Commissioner at step five to show the claimant can perform other work that

exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age,

education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099,

1100.  If the Commissioner finds the claimant is unable to perform other work, the claimant is found

disabled and benefits may be awarded.  In this case, the ALJ determined that considering Plaintiff's age,

education, work experience and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that Plaintiff could perform, including that of an office helper, a parking

lot attendant, and a storage rental clerk.  AR at 31-32.  The ALJ therefore concluded Plaintiff was not

disabled as defined in the SSA.  *Id*. at 32, Finding 11.

V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1.      Did the ALJ err in evaluating the opinions of Plaintiff's treating physician?

2.      Did the ALJ err in evaluating the opinions of mental health professionals?

3.      Did the ALJ err in determining Plaintiff's RFC?

ORDER - 4

4.      Did the ALJ err in assessing Plaintiff's credibility or lay witness statements?

5.      Did the ALJ err in making the step five determination?

Dkt. No. 14 at 1.

## VI. DISCUSSION

*A.     The ALJ did not err in evaluating the opinions of treating physician Dr. Odderson.*

Plaintiff asserts that the ALJ erroneously rejected the opinions of his treating physician, I.B. Rask Odderson, M.D., Ph.D.  Dkt. 14 at 13-17.  To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.*  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal citations omitted).  The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor, may be upheld. *Morgan v. Commissioner,* 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Dr. Odderson treated Plaintiff for back and neck pain from August 2003 through February 2006.  AR at 532-83.  Plaintiff argues that the ALJ erroneously rejected conclusions from Dr. Odderson contained in two reports completed in January and February 2006.  Plaintiff argues the ALJ rejected the findings of these two reports without providing specific and legitimate reasons supported by substantial evidence.  Dkt. 14 at 15.

With respect to Dr. Odderson's findings, the ALJ noted:

Dr. Odderson completed several evaluation forms opining that the claimant was limited to sedentary work (Exhibit 33F p16, 34).  On January 19, 2006, Dr. Odderson completed a form opining that the claimant could lift a maximum of 20 pounds occasionally and 10 pounds frequently, stand and walk less than two hours, and sit for about four hours in an eight-hour workday.  The doctor opined that the claimant had restrictions with reaching, pushing, and pulling.  Dr. Odderson opined that the claimant would be absent from work more than three times a month and could not likely perform a sedentary job full-time.

ORDER - 5

1   (Exhibit 33F p6).

2   AR at 25.

3       I wholly discount Dr. Odderson's opinion as expressed in the forms completed on
        February 2, 2006 and January 19, 2006 (Exhibit 33F p1-6). Dr. Odderson listed attention
4       deficit disorder and fibromyalgia among the claimant's diagnoses, which are not medically
        determinable impairments based on the evidence of record. Dr. Odderson reported that
5       the claimant's back injury was the result of playing football, whereas elsewhere the
        claimant's back problem was attributed to a work related injury (Exhibit 33F p2). These
6       forms are a litigation related ploy wholly unsupported by the record. I assign no weight to
        Dr. Odderson's opinion that the claimant was limited to sedentary work, in part, due to
7       fibromyalgia (Exhibit 33F p16). Again, fibromyalgia is not a medically determinable
        impairment.

8   AR at 30.

9       Plaintiff asserts that the ALJ's above opinions regarding Dr. Odderson's findings are flawed for

10  the following reasons: Dr. Chu also diagnosed Attention Deficit Disorder ("ADD") in 2005; Dr.

11  Odderson was merely reporting a history of fibromyalgia, not diagnosing fibromyalgia; although Dr.

12  Odderson erroneously attributed Plaintiff's back problem to football when it was a work-related injury, it

13  is not a legitimate reason to reject all of the opinions of a treating physician; the ALJ's criticism of the

14  questionnaire completed by Dr. Odderson at Plaintiff's counsel's request is not a legitimate reason to

15  reject those opinions; and the ALJ did not recognize that a 2004 Magnetic Resonance Imaging ("MRI")

16  established significant back impairments, findings which were not available to Plaintiff's examining

17  doctors prior to the MRI. Dkt. 14 at 15-17.

18      This Court finds the reasons given by the ALJ for rejecting the two reports of January and

19  February 2006, specific and legitimate, and supported by substantial evidence in the record. The ALJ

20  was not required to agree with Dr. Odderson or adopt his findings in whole or in part; the ALJ has

21  discretion to discredit the portions of an opinion that are not supported by the record. The ALJ analyzed

22  Dr. Odderson's conclusions but disagreed with respect to the level of limitation opined, particularly with

23  the conclusions set forth on the forms filled out in January and February 2006. The ALJ "wholly

24  discounted" Dr. Odderson's opinion from those two reports, finding that the diagnosis of ADD and

25  history of fibromyalgia were not supported by the medical evidence. While the record reflects Dr. Chu

26  did see Plaintiff for ADD on three occasions, the ALJ also discussed Dr. Chu's diagnosis and concluded

27

28  ORDER - 6

ADD was not a medically determinable impairment, noting that Plaintiff had completed high school, was not involved in special education, attended community college classes, and was not taking any medication for ADD.  AR at 26.

With respect to the history of fibromyalgia, the ALJ found that the record also did not support it:

Dr. Odderson listed fibromyalgia among claimant's diagnoses.  However, the medical record does not contain the objective findings necessary to make this diagnosis as established by the American College of Rheumatorlogy (ACR).  Specifically, there is no mention of pain with palpation of at least 11 of 18 tender point sites.  Therefore, fibromyalgia is not a medically determinable impairment.

AR at 26.

Although Plaintiff disputes whether the history or diagnosis of fibromyalgia is attributable to Dr. Odderson, the Court notes that Dr. Odderson listed only fibromyalgia and ADD in finding that he should be limited to sedentary work in his May 2005 treatment notes.  *See* AR at 547.

Next, Plaintiff correctly asserts that it would not be appropriate for an ALJ to entirely dismiss the opinion of a treating physician based on a mere misstatement of how an injury occurred, however, the ALJ here did not base the rejection on that sole fact; the ALJ listed the discrepancy among the other factors he set forth for assigning less weight to some of Dr. Odderson's opinions.  AR at 30.

Similarly, Plaintiff assigns error to the ALJ's criticism of the two questionnaires Dr. Odderson completed in January and February 2006.  The ALJ noted that, "[t]hese forms are a litigation ploy wholly unsupported by the record."  AR at 30.  Plaintiff correctly argues that the fact that a doctor uses forms to record opinions, even at the request of Plaintiff's counsel, does not necessarily invalidate them.  *See* *Reddick v. Chater*, 157 F.3d 715, 726-27 (9th Cir. 1998).  However, the ALJ here did not dismiss the opinions solely because they were contained in the forms or because they were generated for litigation support.  As discussed above, the ALJ also found that some of Dr. Odderson's observations were inconsistent and not supported by medical evidence in the record.  AR at 30.

Plaintiff next argues that the ALJ did not recognize that one of his MRI's done in 2004 established "significant back impairments," findings which were not available to Plaintiff's examining doctors prior to that particular MRI.  Dkt. 14 at 17.  The Court disagrees with Plaintiff's assertion.  The ALJ concluded based on medical opinions prior to 2004, which he gave controlling weight, that Plaintiff

ORDER - 7

has *severe* back impairments of degenerative disc disease of the cervical and lumbar spine and thoracic outlet syndrome.  AR at 24, Finding 3.  The ALJ found based on those severe back impairments, that Plaintiff's limitation in lifting and carrying is only twenty pounds occasionally and ten pounds frequently, that he can only stand or walk for two hours at a time for only four hours in a workday, and can only sit for two hours at time, and that he is unable to perform tasks that require raising his arms overhead or raising his arms while extended.  AR at 27.  It is noteworthy that even Dr. Odderson opined that Plaintiff would be able to perform some sedentary work as defined on the 2005 form he filled out as, "...the ability to lift 10 pounds maximum and frequently lift and/or lift such articles as files and small tools.  A sedentary job may require sitting, walking and standing brief periods."  AR at 547.  On the same form, Dr. Odderson also noted that Plaintiff's affected work activities would be a limited ability to walk for 30 minutes; sit for 40 minutes; lift 20 pounds and stand for 20 minutes.  *Id.*

This Court finds the reasons given by the ALJ for rejecting in part the opinions of Dr. Odderson, some of which are set forth above, specific and legitimate, and supported by substantial evidence in the record. Thus, the ALJ did not err in this regard.

B.      *The ALJ did not err in evaluating the opinions of mental health professionals.*

Plaintiff asserts that the ALJ improperly rejected the opinions of mental health professionals, Janet Noel-Harshbarger, M.A., and Linda Ciaramitaro, A.R.N.P.  The record reflects that Ms. Harshbarger and other counselors saw Plaintiff for mental health counseling at Compass Health from December 2004 through January 2006.  AR at 420-529.  Counselor Harshbarger filled out a residual functional capacity form on January 20, 2006, which was apparently reviewed and signed off by nurse practitioner Ciaramitaro.  Dkt. 14 at 17-18; AR at 530-31.  Defendant asserts that Ms. Harshbarger and Ms. Ciaramitaro are a counselor with a Master's degree and a nurse practitioner, and therefore their opinions should be held to the lower standard of review of lay witness opinions.  An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Inconsistency with medical evidence is one such reason.  *Id.*  The ALJ did not, as Plaintiff suggests, discredit the opinions because they were lay witnesses.  The ALJ analyzed the form along with

the other medical and psychological examiners' opinions, in compliance with SSR 06-03p.[2]  However, the

ALJ gave reduced weight to the RFC form, noting:

> I assign very little weight to the mental residual capacity form completed by Nurse Ciaramitaro and Janet Noel Harshbarger, M.A. (Exhibit 32F).  This is a check box form and does not contain a significant explanation of the bases for the conclusions.  They indicated that the claimant had substantial difficulty maintaining attention and concentration for extended periods of time, which is not consistent with the claimant's educational pursuits or extensive reading.  I note that the claimant's counselor went over the form with the claimant while filling it out.  (Exhibit 31F p1).  Hence, this evidence is of little value as it is basically an opinion of accommodation.

AR at 30.

The form consists of twenty check-box categories of functioning, which are each rated on a scale

of one through five, with one representing no limitation and five representing a total inability to perform.

AR at 530-31.  Plaintiff's least functional score, level four[3], was assigned to two of the twenty categories.

However, the ALJ found that other evidence showed Plaintiff's attention and concentration levels were

higher than opined on the form, based on his enrollment in community college courses and his reading

habits.  The ALJ also questioned the objectivity of the opinion, based on the context in which it was filled

out, citing the fact that the counselor went over the form with the claimant, and referencing Exhibit 31 F

page 1, in which the counselor wrote that, "Rich brought in papers from attorney regarding SSD and

requested we do together."  AR at 420.  With respect to grounds for rejecting medical reports, the

*Reddick* Court found that, "the mere fact that a medical report is provided at the request of counsel or,

more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the

---

[2] SSR 06-03p provides in relevant part, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

[3] Rating level four denotes the subject is "able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity) more than 20 percent of the work day or work week (*i.e.*, more than one hour and up to two hours/day or one-half to one day/week).

ORDER - 9

1   reliability of the report.  Evidence of the circumstances under which the report was obtained and its

2   consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating

3   the reliability of the report." *Reddick*, 157 F.3d at 726.  Accordingly, the *Reddick* Court concluded that

4   "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which

5   the report was obtained does not provide a legitimate basis for rejecting it." *Id.*  Therefore, an ALJ may

6   not reject an opinion solely on the basis for which it was obtained but may consider it as a factor where a

7   report is also in question for consistency, internally or in comparison to the rest of the record.  In the

8   present case, the ALJ did not reject on that basis alone, he also questioned the objectivity of the report

9   and found it was inconsistent with other evidence in the record, that of his educational pursuits and

10  extensive reading.  The record supports the ALJ's findings; although Plaintiff has had difficulty with some

11  courses, at the time of the hearing he was enrolled in more classes and had been given accommodations

12  including a special chair and more time to take his examinations.  This Court finds those reasons given by

13  the ALJ specific and legitimate and supported by substantial evidence in the record, and notes that the lay

14  witness standard which requires the ALJ give "germane" reasons for rejecting testimony is satisfied.

15  Accordingly, the ALJ did not err in evaluating the opinions of mental health professionals.

16          C.      *The ALJ did not err in determining Plaintiff's Residual Functional Capacity.*

17          Plaintiff argues that the ALJ erred by failing to assess his RFC on a "regular and continuing basis"

18  which Plaintiff asserts is contrary to SSR 96-8p[4] and *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998).

19  Dkt. 12 at 18-19.  In *Reddick*, the Court found error where the ALJ did not account for Plaintiff's

20  chronic fatigue with respect to her ability to undertake sustained work.  *Id.* at 724.  *Reddick* is

21  distinguishable because the court found error in the ALJ's failure to address whether the plaintiff's

22  *chronic fatigue* would have an effect on the ability to work on a regular and continuing basis.  Here,

23  Plaintiff has not been diagnosed with chronic fatigue syndrome, but degenerative disc disease of the

24  cervical and lumbar spine, thoracic outlet syndrome, depression, and obesity.  AR at 24, Finding 3.  The

25

26  [4] SSR 96-8p provides in relevant part:  Ordinarily, RFC is an assessment of an individual's ability to do
    sustained work-related physical and mental activities in a work setting on a regular and continuing basis.

27  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

28  ORDER - 10

1   ALJ also found that Plaintiff "has occasional lapses in concentration, but is able to maintain focus and

2   concentration the majority of the time." AR at 27. Plaintiff argues that "the ALJ totally failed to assess

3   whether the claimant is capable of working on a 'regular and continuing basis' even though he requires

4   frequent rest breaks and medical professionals found deficiencies in persistence and pace, as well as the

5   ability to complete a normal workday/week." Dkt. 14 at 18. The Court does not agree. As discussed

6   above, the ALJ did not err in evaluating the medical and psychological evidence that Plaintiff disputes.

7   The ALJ gave greater weight to the conclusions of Dr. Norfleet who found Plaintiff's memory was intact

8   and did not otherwise observe a mental impairment that would pose a significant obstacle to work

9   adaptation. AR at 29.

10         Furthermore, Plaintiff's argument that the residual functional capacity determination did not

11   consider whether he could work on a "regular and continuing basis" is spurious. It is axiomatic that the

12   RFC determination is an assessment of a claimant's ability to perform ongoing work. *See* 20 C.F.R.

13   404.1545(a)(4) ("When we assess your residual functional capacity, we will consider your ability to meet

14   the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d)

15   of this section."). Plaintiff cites no contrary law.[5]  The ALJ found that Plaintiff has the ability to: "lift

16   and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for two hours

17   at a time for a total of approximately four hours in and eight-hour workday. The claimant can sit for two

18   hours at a time for a total of at least six hours in an eight-hour workday." AR at 27. Such a finding is an

19   assessment of Plaintiff's ability to perform ongoing work.

20         Plaintiff next argues that the ALJ did not fully address the opinions of nonexamining state agency

21   physicians regarding moderate mental limitations with respect to his ability to complete a normal workday

22   and workweek. Dkt.14 at 19. Plaintiff is correct that the ALJ did not specifically address the two boxes

23

24   [5]The Court notes that Plaintiff attaches to his Reply brief an unpublished decision from this district,
25   wherein the court remanded to the ALJ for a redetermination based on several errors, including an error
     under *Reddick*. This Court is not bound to follow unpublished case law, therefore the Court makes no
26   determination whether the facts of that case are at all similar or relevant to the facts of the present case.
     The Court reminds Plaintiff's counsel of the rule generally prohibiting citation to unpublished decisions in
27   the Ninth Circuit as explained in *Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001).

28   ORDER - 11

checked on a form finding a moderate limitation (AR at 335-36), however the ALJ's findings with respect to concentration and ability to carry out tasks are fully consistent with the overall conclusions of that opinion[6].  AR at 337; 27.

Plaintiff's assertion that the ALJ adopted the RFC assessment of Dr. Flemming "simply because he is an expert in evaluating disability claims" is without merit.  Dkt. 14 at 19.  The ALJ noted that Dr. Flemming is an expert and noted that he assigned his opinion according weight.  AR at 29.  The Court also disagrees with Plaintiff's assertion that the ALJ did not consider all of his limitations and impairments in determining his RFC, specifically, ADD and depression with anxiety (Dkt. 14 at 19), as discussed above with respect to the opinions of Dr. Odderson.

Finally, the Court disagrees with Plaintiff's assertion that the ALJ improperly rejected Plaintiff's testimony without articulating "clear and convincing reasons."  Dkt. 14 at 19.  Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59.  In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from

---

[6]Plaintiff also disputes whether the sections of the report are internally consistent, as well as disputes the ALJ's and Defendant's interpretation of the report findings.  Regardless, the ALJ's determination is consistent with the conclusion of the report which states, "[claimant's] low mood may occasionally interfere [with] his ability to maintain extended concentration, persists on tasks and perform at a consistent pace.  He would be able to carry out detailed tasks on a reasonably consistent basis."  AR at 337.  The form is consistent with the ALJ's finding that "[t]he claimant has occasional lapses in concentration, but is able to maintain focus and concentration the majority of the time."  AR at 27.

ORDER - 12

physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In his decision, the ALJ discussed Plaintiff's credibility in extensive detail and included numerous specific citations to medical testimony and activities of his daily living that showed Plaintiff's impairments to be less limiting than the extent Plaintiff alleges. *See* AR at 28-29. The ALJ specifically noted the lack of objective medical evidence supporting the severity of Plaintiff's complaints. Accordingly, the Court finds that the ALJ properly determined that Plaintiff's subjective allegations were less than fully credible. The ALJ's credibility assessment is supported by clear and convincing reasons, based on substantial evidence, and free of legal error. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to "great deference"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

Plaintiff also alleges that the ALJ improperly discredited lay witness statements submitted by his two sisters and mother which included testimony that he had concentration and irritability problems. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2002). In this case, the ALJ gave the three lay witness statements little weight, reasoning: "I note that the claimant said that he had a strained relationship with his sister and mother. Again, he has remained quite active with friends and had girlfriends during the period at issue. Ms. Nikfard and Ms. Lyon indicated that the claimant was always complaining of pain. However, doctors noted that the claimant's subjective complaints were out of proportion to the objective findings." AR at 30. The Court therefore finds the ALJ gave germane reasons for giving little weight to the lay witness statements and therefore did not err in this regard.

D.    *The ALJ did not err in making the step five determination.*

Plaintiff contends that the ALJ erred at step five because the hypothetical question the ALJ presented to the VE was incomplete because it did not include all of the limitations Plaintiff alleges. Plaintiff bases this argument on assigning error to the RFC determination, as discussed above. Dkt. 14 at 20. The ALJ found that although Plaintiff could not perform the full range of light work, he could

ORDER - 13

perform a significant range of light work with the additional limitations of being "unable to perform tasks that require raising his arms overhead or raising his arms while extended." AR at 27. The ALJ further found that although Plaintiff has occasional lapses of concentration, he is able to maintain focus and concentration the majority of the time. *Id.* Based on the vocational expert testimony in response to a hypothetical question involving a person with those limitations, the ALJ concluded Plaintiff is capable of working as an office helper, a parking lot attendant, and a storage rental clerk. *Id.* As addressed above, this Court finds the RFC determination was based on substantial evidence and not in error; thus, the hypothetical questions asked of the VE based on that RFC were also not in error. The ALJ appropriately used a vocational expert to find examples of light-work jobs Plaintiff could perform, based on the RFC he assigned. Where the ALJ's findings are based upon substantial evidence in the record, the Commissioner's decision to deny benefits will not be reversed. *Bayliss*, 427 F.3d at 1214.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is DISMISSED.

DATED this 19th day of May, 2008.

Carolyn R. Dimmick
United States District Judge

ORDER - 14